IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DAVID DELEE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL CASE NO. 3:20-cv-763-ECM ) (WO) |
| CITY OF LANETT, *et al.*, | ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court are the Plaintiff David DeLee's ("DeLee") motion for summary judgment (doc. 36), the Defendants Kyle McCoy and City of Lanett's (collectively, "the Defendants") motion for summary judgment (doc. 33), and the Defendants' motions to strike various Plaintiff exhibits (docs. 45, 53).

DeLee brings a claim against the Defendants for First Amendment retaliation pursuant to 42 U.S.C. § 1983. The Court held oral argument on the summary judgment motions on December 20, 2022 (doc. 63) and will reference the relevant arguments and concessions made therein where appropriate.

Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, the Defendants' first motion to strike is due to be DENIED, the Defendants' second motion to strike is due to be GRANTED, DeLee's motion for summary judgment is due to be DENIED, and the Defendants' motion for summary judgment is due to be GRANTED.

## I. JURISDICTION

The Court has original subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1331. Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## II. LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018). If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition.[1] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[1] In violation of this Court's instructions in the Amended Scheduling Order (doc. 27 at 2, Section 2), DeLee failed to cite to the evidence with appropriate specificity in portions of his submissions. Despite this failure, the Court undertook a thorough examination of the evidence in evaluating DeLee's claim on summary judgment.

2

The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

The Court construes the facts in the light most favorable to the non-movant plaintiff[2] and draws all reasonable inferences in his favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party' and 'resolve all reasonable doubts about the facts in favor of the non-movant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations omitted)).

### III. FACTS

Plaintiff David DeLee is the former utilities superintendent for the City of Lanett ("Lanett"). DeLee was a Lanett employee for nearly thirty years and started his role as utilities superintendent around 2006. As superintendent, DeLee oversaw the operations of the city's gas and electric systems.

Defendant Kyle McCoy ("McCoy") is the former mayor of Lanett. McCoy was appointed mayor in 2015 and re-elected in 2016. As the highest ranking Lanett official, McCoy had supervisorial capacity over DeLee. Although DeLee claimed otherwise at oral

---

[2] While DeLee filed his own motion for summary judgment, the Court finds its resolution on the Defendants' motion for summary judgment dispositive. Thus, the Court considers DeLee the non-movant.

argument, the record shows that DeLee and McCoy had a strained relationship prior to February 2020. For example, DeLee was aware that McCoy wanted to terminate DeLee and appoint himself utilities superintendent. Meanwhile, McCoy knew that DeLee and DeLee's employees called McCoy, who is married to another man, slurs like "fag" and "faggot."

Between 2017 and 2020, DeLee claims that McCoy and other Lanett employees engaged in wrongful conduct. For example, DeLee claims that McCoy denied DeLee's longevity raise, abused his power as mayor, and conducted improper hiring. DeLee was also selected for random drug testing each time it was conducted until the process was paused in 2020.[3]

DeLee also became aware of ethical improprieties taking place within Lanett. DeLee claims that Lanett employees, such as Donna Thompson ("Thompson"), Lanett's HR director, altered employee timecards. DeLee learned that McCoy had significant personal power bills that were paid by the city. DeLee also learned that McCoy's husband, who was not a city employee, drove a city vehicle for personal use. On February 14, 2020, DeLee filed a complaint with the Alabama Ethics Commission detailing McCoy's misuse of city funds.

McCoy first learned that an ethics investigation had been launched around March of 2020 after an ethics investigator visited McCoy's antique store. McCoy received a letter

---

[3] DeLee sets forth additional incidents, many occurring before he filed the relevant ethics complaint. The Court has considered all of the evidence but focuses its analysis on those actions occurring after the protected activity.

in late March or early April confirming that an ethics complaint had been filed. The letter did not state the basis for the complaint or identify who filed the complaint.

McCoy asserts that he first learned the basis of the ethics investigation in June or July 2020 through Augusta Dowd ("Dowd"), his criminal attorney. According to McCoy, he did not learn that DeLee filed the complaint until DeLee filed this lawsuit in September 2020. On multiple occasions, Lewis Hill ("Hill"), a Lanett employee, overheard McCoy and Tony Chandler ("Chandler"), a Lanett employee who worked closely with McCoy, discuss knowing that DeLee filed the ethics complaint. Hill does not recall when these conversations took place and admits that they may have occurred after DeLee retired. On July 6, 2020, Chris McCay ("McCay"), an ethics investigator, told DeLee that Dowd said that McCoy thought DeLee filed the ethics complaint.

DeLee claims that McCoy and other Lanett employees retaliated against him for filing the ethics complaint, which ultimately resulted in his constructive discharge when he submitted his retirement papers on July 30, 2020. After DeLee filed the ethics complaint, McCoy stopped communicating with DeLee personally and instead communicated with DeLee through Chandler. City hall employees, such as Jody Lowery ("Lowery"), suddenly began treating DeLee coldly and avoided speaking with him.

On March 3, 2020, Thompson and city clerk Deborah Gilbert ("Gilbert") gave DeLee a "writeup" after DeLee failed to document an employee's absence from work under the Family Medical Leave Act ("FMLA"). Thompson and Gilbert told DeLee that McCoy wanted DeLee written up for the incident. DeLee informed Thompson and Gilbert that he had been on vacation and was unaware of the employee's absence. Gilbert then told

Thompson that they could not write DeLee up for the incident. Gilbert and Thompson assured DeLee that they would withdraw the writeup. After DeLee retired, he learned that this writeup was still placed in his file.

On March 17, 2020, Chandler told DeLee that due to COVID-19 restrictions, only employees who worked inside city hall would be allowed inside the premises. As DeLee did not work inside city hall, DeLee understood that he could not enter the building. This restriction prevented DeLee from checking his mailbox. After Chandler informed him of this restriction, DeLee saw vehicles parked outside of city hall that belonged to non-city hall Lanett employees. DeLee did not see any of these non-city hall employees enter or exit the building,[4] but DeLee believes that they were allowed inside despite the COVID-19 restrictions.

On March 31, 2020, Thompson informed DeLee that, due to COVID-19, DeLee would need to conduct daily temperature checks on his employees. Thompson provided DeLee with an under-the-tongue thermometer and a bottle of alcohol for this task. All Lanett department heads were asked to conduct daily temperature checks.

That same day, Thompson told DeLee to write up Josh Gosdin ("Gosdin"), one of DeLee's employees. Gosdin had been accused of bullying and intimidating other city employees. On April 2, 2020, Thompson fired Gosdin based on these accusations. DeLee

---

[4] In his October 14, 2022 deposition, DeLee claims that he "witnessed other employees going in and out [of city hall] like normal." (Doc. 42-1 at 13). However, in his earlier deposition, DeLee admitted that he did not "witness them go in and out." (Doc. 35-1 at 28). DeLee cannot contradict his earlier deposition statement in a later-made declaration. *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

believes that Gosdin was actually fired in "retaliation from thinking that Gosdin is the one that filed the complaint." (Doc. 35-1 at 14–15). Before Thompson terminated Gosdin, DeLee warned Gosdin that he was going to be fired. Gosdin later told DeLee that DeLee may be terminated for prematurely warning Gosdin about his termination.

On April 3, 2020, DeLee began experiencing symptoms of COVID. He informed Thompson that he would not report to work until receiving the results of a COVID test. On April 6, Thompson asked other Lanett employees where DeLee was. DeLee reminded Thompson that he was awaiting his COVID test results. On April 7, Thompson called DeLee to ask about his COVID test results. DeLee believes that Thompson overcommunicated with him on the matter as an attempt to harass him for filing the ethics complaint against McCoy.

In June of 2020, Lanett, with McCoy's approval, hired Underwood and Associates to conduct a city job study. The apparent purpose of this study was to improve Lanett's efficiency. DeLee claims that the study was implemented to find justification to terminate him. DeLee heard this theory from Lanett's Fire Chief Johnny Allen ("Allen"), who had been told as such from one of the study's investigators. A report issued at the end of the study labeled DeLee's department "inefficient."[5] The report also concluded that DeLee and McCoy had a "toxic relationship."

On July 6, 2020, Gilbert informed DeLee that she had been nominated to replace DeLee on the Alabama Municipal Electric Authority ("AMEA") Election Committee at

---

[5] In previous years, DeLee's department received awards and recognition for reliability.

the end of DeLee's term.  DeLee served on the committee for about ten years prior to Gilbert's nomination.  AMEA committee members were not compensated.  DeLee admitted at oral argument that he submitted no evidence linking McCoy to this decision.

On July 30, 2020, DeLee submitted his retirement papers with the state, setting August 31, 2020 as his last day of employment with Lanett.  On August 5, 2020, the ethics committee announced that McCoy's investigation had been referred to the Attorney General.  That same day, Thompson told DeLee that he no longer needed to report to work because he had accrued enough sick leave to last until his official retirement date. Thompson asked DeLee to turn in his keys, phone, and other city possessions at that time.

After DeLee retired, McCoy entered a guilty plea for ethical violations and stepped down as mayor of Lanett.  On September 23, 2020, DeLee filed this Complaint alleging First Amendment retaliation against Lanett and McCoy pursuant to 42 U.S.C. § 1983. Although DeLee indicated in his complaint that he brought claims against McCoy in his official and individual capacity, he clarified at oral argument that he only brings a claim against McCoy in his individual capacity. The parties have filed cross motions for summary judgment.

## IV.   DISCUSSION

The Court will first address the Defendants' motions to strike.  The Court will then address the motions for summary judgment.

### A. Motions to Strike

The Defendants submit two motions to strike portions of DeLee's evidentiary submissions.  DeLee correctly argues that a motion to strike is inappropriate at the

summary judgment stage. Accordingly, the Court construes the Defendants' motions to strike as objections to the evidence. *See, e.g.*, Fed. R. Civ. P. 56(c)(2); *Taylor v. City of Gadsden*, 958 F. Supp. 2d 1287, 1291 (N.D. Ala. 2013) ("[T]he court will treat the plaintiffs' Motion to Strike as an objection under Rule 56(c)(2).").

The Defendants' first motion seeks to strike Plaintiff Exhibits 36-2, 36-3, 36-4, 36-5, 36-6, 36-7, 36-8, 36-10, 36-11, and 36-12. (Doc. 45). The Defendants argue that Exhibits 36-10, 36-11, and 36-12 were untimely disclosed because disclosures were due on July 27, 2022 and the exhibits were not disclosed until August 26, 2022. DeLee does not address his untimeliness but argues that the records in question are highly relevant public documents, that the Defendants were aware of the documents in question, and that the Defendants failed to produce requested documents that would have included McCoy's criminal records.

When a party fails to disclose or supplement information in the discovery process, the party cannot rely on that information "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Ultimately, the exhibits in question do not impact the Court's summary judgment decision because the Defendants concede that McCoy pleaded guilty to the ethics violations detailed in the contested records. Accordingly, the Defendants' motion to strike documents 36-10, 36-11, and 36-12 is due to be denied.

9

The Defendants next argue that portions of Exhibits 36-2, 36-3, 36-4, 36-5, 36-6, 36-7 and 36-8 are impermissibly based on hearsay or a lack of personal knowledge.[6] DeLee argues that the declarations of James Floyd and Ron Vanzant (docs. 36-7, 36-8) are either reducible to admissible form at trial or not offered for the truth of the matter asserted. DeLee does not respond to the appropriate argument as to the other documents in question. The court will strike hearsay only if it cannot be reduced to admissible evidence at trial. The court is capable of sifting through the evidentiary material and considering only those portions which are either based on the declarant's personal knowledge or are not being offered for the truth of the matter asserted. The Defendants' motion to strike Exhibits 36-2 through 36-8 will be denied. Accordingly, the entirety of the Defendants' first motion to strike (doc. 45) is due to be denied.

The Defendants next move to strike Plaintiff's Exhibit 52-1 (doc. 53), the ethics commission complaint form, because DeLee never produced it. DeLee argues that he permissibly attached the document to his reply brief to rebut the Defendants' contention that McCoy did not know DeLee filed the ethics complaint until this lawsuit was filed.

"New evidence is not properly considered if offered for the first time in support of a reply brief, but evidence can be offered to rebut a point raised in an opposition brief." *Thompson v. Alabama*, 428 F. Supp. 3d 1296, 1307 (M.D. Ala. 2019) (citing *Hinson v. Chelsea Indus., Inc.*, 542 F. Supp. 2d 1236, 1248 (M.D. Ala. 2008). However, Exhibit 52-

---

[6] These exhibits consist of declarations of current and former employees of the City of Lanett as well as friends of DeLee who affirmed that DeLee worked well with employees and was "highly respected in the community." The declarations also asserted that DeLee "is very trustworthy."

10

1 does not rebut McCoy's lack of knowledge. The ethics complaint form provides that "at the appropriate time this information [about the complaint] *may* be made available to the respondent or his/her attorney." (Doc. 52-1 at 2) (emphasis added). The complaint form does not prove if or when McCoy learned any information about the complaint, it only shows that he may have been able to learn some information at some point. As the ethics complaint does not rebut a contention in the Defendants' reply brief, DeLee's failure to disclose Exhibit 52-1 cannot be excused. The Defendants' motion to strike Exhibit 52-1 (doc. 53) is due to be granted.

### B. First Amendment Retaliation

DeLee claims that the Defendants retaliated against him in violation of his First Amendment rights. To establish a First Amendment retaliation claim, a plaintiff must show "(1) [he] engaged in constitutionally protected speech . . . (2) the defendant[s'] retaliatory conduct adversely affected that protected speech . . . and (3) a causal connection exists between the defendant[s'] retaliatory conduct and the adverse effect on the plaintiff's speech." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

The Court finds, and the Defendants do not dispute, that DeLee engaged in constitutionally protected speech when he filed the ethics complaint against McCoy. The Court will first address the remaining elements of First Amendment retaliation. The Court will then address McCoy's claim that he is entitled to qualified immunity.

#### 1. Adverse Effect on Protected Speech

"A public employer retaliates when [it] takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech." *Stavropoulos v. Firestone*,

11

361 F.3d 610, 618 (11th Cir. 2004). "[A]n adverse employment action . . . must involve an important condition of employment." *Id.* at 619. A constructive discharge is an adverse employment action. *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1300–01 (11th Cir. 2005). A constructive discharge may take place by way of an employee's premature retirement. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 805 (11th Cir. 2005) ("Constructive discharge occurs 'when the offer presented was, at rock bottom, a choice between early retirement . . . or discharge.'" (quoting *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993))).

In a constructive discharge claim, a plaintiff must show "that working conditions were so intolerable that reasonable persons in [the plaintiff's] position would have felt compelled to resign." *Akins*, 420 F.3d at 1302. "The standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001). To reach the jury, "the plaintiff must produce substantial evidence that conditions were intolerable." *Akins*, 420 F.3d at 1302.

DeLee claims that he has submitted evidence of working conditions so intolerable that he has established an adverse employment action by way of constructive discharge. The Defendants argue that DeLee has failed to produce evidence of intolerable working conditions to reach the level of a constructive discharge. As the Court ultimately concludes that this case fails on causation, it assumes without deciding that DeLee has established an adverse employment action through a constructive discharge.

### 2. Causal Connection

The plaintiff must also establish a causal connection "between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." *DeMartini*, 942 F.3d at 1289. To do so, the plaintiff must demonstrate that the employee's protected speech "played a 'substantial part' in the employer's decision to" take an adverse employment action against the employee. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir. 2006). If the plaintiff does so, the burden shifts to the defendants to show that the adverse employment action would have occurred "even in the absence of the protected conduct." *Id.* "[P]urely circumstantial evidence, taken in the light most favorable to the plaintiff, can create a jury question on" causation. *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1565 (11th Cir. 1995). "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (quoting *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)).

Many of DeLee's workplace complaints pre-date his protected activity. However, events that occurred before February 14, 2020, the date DeLee filed the ethics complaint, cannot be retaliatory because the protected speech had not yet taken place. Accordingly, DeLee cannot rely on his frequent selection for random drug testing, his denied longevity raise, the altered timecards, or any other pre-February 14, 2020 conduct to establish causation. In that same line, events that occurred after July 30, 2020, the date DeLee submitted his retirement papers, could not have caused DeLee's decision to retire.

Accordingly, the outermost timeframe DeLee can use to establish causation is from February 14, 2020 to July 30, 2020.[7] Because McCoy did not learn that an ethics complaint had even been filed until March, March is more realistically the earliest date that events could be causally relevant to DeLee's First Amendment claim.

Ultimately fatal to DeLee's claim is his failure to establish the Defendants' knowledge that DeLee filed the ethics complaint within that causally relevant timeframe. To show causation, DeLee must show that the retaliatory acts took place *after* the Defendants learned that DeLee filed the ethics complaint. Without that knowledge, the Defendants could not retaliate against DeLee for his speech.

McCoy submitted sworn testimony that he did not know DeLee filed the ethics complaint until DeLee filed this lawsuit in September 2020. DeLee has not set forth evidence to rebut this testimony head on. At oral argument, DeLee claimed that his strongest evidence of McCoy's knowledge is Allen's deposition testimony that an Underwood investigator told Allen that the Underwood job study was designed to find a reason to terminate DeLee. However, Allen's testimony does not establish McCoy's knowledge. First, the statement comes from the Underwood investigator and is not tied to McCoy. Second, even if the statement was tied to McCoy, it only suggests that McCoy wanted a reason to terminate DeLee. In light of the record evidence that DeLee and McCoy had a toxic relationship dating back to 2017, this evidence does little to rebut McCoy's sworn testimony.

---

[7] DeLee conceded as such at oral argument.

Looking beyond Allen's deposition testimony, DeLee at best puts forth rumors that McCoy suspected that DeLee filed the ethics complaint. Such is true of the conversations Hill overheard between McCoy and Chandler or the statement made by Dowd to the ethics investigator. DeLee cannot tie Hill's testimony to a particular date or establish concrete evidence that McCoy knew DeLee filed the complaint. In fact, there is evidence in the record showing that McCoy did not know who filed the ethics complaint. When asked why Gosdin was fired in April 2020, DeLee speculated that McCoy thought that Gosdin filed the ethics complaint.

Further cutting against causation is the strained nature of DeLee's relationship with McCoy before DeLee filed the ethics complaint. DeLee and his crew used derogatory slurs directed at McCoy's sexual orientation. Further, DeLee was aware that McCoy may have wanted to terminate DeLee and take his position as superintendent. McCoy had also denied DeLee's longevity raise. Taken together, these actions show hostility between McCoy and DeLee that pre-dated the ethics complaint. This pattern of hostility spanned from 2017 until DeLee's retirement. That DeLee engaged in a protected activity during the pendency of the continued hostility is insufficient evidence of causation.

Essentially, DeLee asks the Court to infer that 1) ambiguous statements establish McCoy's knowledge, 2) McCoy's knowledge pre-dated the alleged retaliatory acts, and 3) McCoy's knowledge played a substantial part in any conduct leading to DeLee's constructive discharge. While a plaintiff can establish causation through circumstantial evidence, DeLee argues that the alleged retaliatory acts are somehow linked to his ethics complaint without evidence McCoy knew that DeLee filed the ethics complaint during the

15

relevant time period. Here, where McCoy has submitted sworn testimony that he did not know DeLee filed the ethics complaint and the parties had a hostile relationship pre-dating the protected activity, there is insufficient evidence to infer McCoy's knowledge and submit causation to the jury. *But see Seals v. Leath*, 2022 WL 16701109, at *16 (M.D. Ala. Nov. 3, 2022) (inferring knowledge of protected speech despite sworn testimony to the contrary when protected speech contained context clues about the speaker's identity). Because DeLee has not established causation, the Defendants' motion for summary judgment is due to be granted.

### 3. Qualified Immunity

McCoy also claims that he is entitled to qualified immunity in his individual capacity. Once a government official establishes that he was performing a discretionary function, a plaintiff must satisfy a two-pronged inquiry to defeat a qualified immunity defense. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)). The first prong asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong asks whether the violation of the federal right was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, the parties agree that McCoy was acting in his discretionary capacity. Accordingly, the burden is on DeLee to establish that McCoy violated a federal

16

constitutional right that was clearly established. As discussed, DeLee fails to establish a violation of his rights under the First Amendment. As such, no qualified immunity analysis is necessary and McCoy's summary judgment motion is due to be granted.

## V.  CONCLUSION

For the reasons discussed above, it is hereby ORDERED as follows:

1. The Defendants' first motion to strike (doc. 45) is DENIED.

2. The Defendants' second motion to strike (doc. 53) is GRANTED.

3. The Plaintiff's motion for summary judgment (doc. 36) is DENIED.

4. The Defendants' motion for summary judgment (doc. 33) is GRANTED, and judgment will be entered against David DeLee and in favor of Kyle McCoy and the City of Lanett.

A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 3rd day of January, 2023.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE